# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NANCY L. McCLUSKEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 10-694 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

### I.     Introduction

Currently pending before the Court is a Motion to Dismiss Plaintiff Nancy L. McCluskey's ("Plaintiff") Complaint pursuant to Fed. R. Civ. P. 12(b)(1) filed by Defendant, the United States of America ("United States"). (Docket No. 5). The United States asserts that this Court lacks subject matter jurisdiction over Plaintiff's libel and intentional infliction of emotional distress claims under the Federal Employees Compensation Act ("FECA"), the doctrine of derivative jurisdiction, and the Federal Torts Claims Act ("FTCA"). For the reasons set forth below, Defendant's motion is GRANTED.

### II.    Factual Background

#### A.  *Plaintiff's Allegations*

Plaintiff, Nancy L. McCluskey ("Plaintiff"), is employed by the Defense Contract Management Agency ("DCMA") as a contract administrator. (Docket No. 1-2 at ¶3). The DCMA is an agency of the United States of America. Joseph Scott ("Scott") is also employed by

1

the DCMA and works as a contract operations group leader. (Docket No. 1-2 at ¶4). At all times material to the allegations underlying Plaintiff's Complaint, Scott was acting within the course and scope of his employment at DCMA. (Docket No. 1 at ¶ 6). Plaintiff has been diagnosed with bipolar disorder, a diagnosis known to Scott. (Docket No. 1-2 at ¶¶ 13, 14).

Plaintiff avers that Scott intentionally caused her emotional distress. On November 25, 2008, Scott allegedly entered Plaintiff's office, stared at her angrily and stated, "You have hate for me because it's racial." (Docket No. 1-2 at ¶ 15). This incident caused Plaintiff sufficient stress that she had to leave work. (Docket No. 1-2 at ¶ 16). Plaintiff asserts that Scott continued to cause her emotional harm after this incident. On August 12, 2009 and November 6, 2009, Scott willfully and intentionally intimidated Plaintiff when he allegedly walked past her, stopped, and stared at her until she turned away. (Docket No.1-2 at ¶17). Plaintiff asserts that on both of these dates, she also informed her superiors about Scott's intimidating actions, but no action was ultimately taken by the DCMA management. (Docket No. 10-1 at ¶¶ 8-10). Plaintiff states that she had to seek psychiatric treatment and take unpaid leave at the direction of her doctor because of Scott's actions. (Docket No. 1-2 at ¶¶18-19).

Plaintiff also alleges that she was libeled by Scott. On March 17, 2010, Plaintiff claims that Scott sent an email from his DCMA email account to Plaintiff and at least four other DCMA employees claiming that Plaintiff was unwilling to work with him because of his race. (Docket No. 1-2 at ¶ 6). Upon receiving the email, Plaintiff alleges that she immediately reported Scott's conduct to her superiors, but that no action was taken against him. (Docket No. 10-l at ¶ 13). Plaintiff maintains that she was humiliated and suffered emotional harm as a result of this email circulation. (Docket No. 1-2 at ¶ 11). In her prayer for relief, Plaintiff is seeking damages for her humiliation, psychological treatment, lost work, and lost income. (Docket No. 1-2 at ¶¶ 11 &

21).

*B.  Plaintiff's EEO Complaints*

Prior to bringing this action, Plaintiff filed both informal and formal EEO complaints of discrimination against DCMA.  Plaintiff made an informal complaint of discrimination on December 30, 2008, in which she alleged non-sexual harassment based on her race and gender. (Docket No. 10-1 at ¶¶ 1-3).  The informal complaint did not present a claim for monetary corrective action or otherwise present a claim for damages sounding in tort under the FTCA. (Docket No. 13-1 at ¶ 4).  Plaintiff's informal EEO complaint was subject to mediation and subsequently, she retracted her employment discrimination complaint against DCMA.  (Docket No. 13-1 at ¶ 4).

On March 23, 2009, Plaintiff entered a formal EEO grievance against DCMA alleging that she was discriminated against on the basis of her race, gender, disability, and as reprisal for her December 20, 2008 informal complaint.  (Docket No. 10-1 at ¶ 6).  On April 13, 2009, Plaintiff's EEO complaints were dismissed by the Equal Employment Manager at DCMA because Plaintiff failed to state a claim upon which relief could be granted.  (Docket No. 13-1 at ¶ 8).  Plaintiff did not present a claim for monetary damages or otherwise present a claim under the FTCA.  (Docket No. 13-1 at ¶ 7). DMCA's Equal Employment Manager advised Plaintiff of her administrative appeal rights and her right to file a civil action in an appropriate United States District Court within ninety (90) days of her receipt of that decision.  (Docket No. 13-1 at ¶ 8) Plaintiff did not file an appeal with the United States Equal Employment Opportunity Commission (EEOC) or file a timely civil action alleging employment discrimination.  (Docket No. 13-1 at ¶ 9).

*C.  Plaintiff's Other Actions*

Plaintiff also avers that she attempted to seek remedies under FECA, but was told on March 29, 2010 by a member of the human resources department at DCMA that she could not file a claim under FECA. (Docket No. 10-1 at ¶ 16). DCMA, however, states in its supporting affidavit that it has examined its records diligently and has failed to find the existence of, or a receipt of a claim for damage, injury or death ("Standard Form 95"), or any other documents or writing from Plaintiff that could be construed as an administrative claim for damages against the United States arising out of any negligence or wrongful act on the part of any DCMA employee. (Docket No. 6-1 at ¶ 4).

## III. Procedural History

Plaintiff filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania against Scott, on May 3, 2010. (Docket No. 1-2). The Complaint asserts claims of libel and intentional infliction of emotional distress against Scott. (Docket No. 1-2). On May 20, 2010, the case was removed to this Court pursuant to 28 U.S.C. §§1442 and 1446 on the basis that Scott is an employee of the United States and was at all times acting within the course and scope of his employment when the alleged incidents giving rise to Plaintiff's claims occurred. (Docket No. 1 at ¶¶ 1& 6). On May 24, 2010, the United States filed a Motion for Substitution of Party on the basis that Scott is a federal employee who was acting within the scope and course of his employment at DCMA. (Docket No. 3 at ¶¶ 3, 5). The motion was granted and Scott was dismissed from the case.[1] (Docket No. 9).

The United States then filed the instant Motion to Dismiss Plaintiff's Complaint on May 25, 2010. (Docket Nos. 5, 6). Plaintiff filed her response, supporting brief and verified

---

[1] A federal employee acting within the scope of his employment is entitled to enjoy individual immunity from suit under the FTCA. *See* 28 U.S.C. §2671 *et seq.* The FTCA provides that all actions arising thereunder must be brought in the name of the United States of America. 28 U.S.C. § 2679(a). Accordingly, Scott was dismissed with prejudice from this action and the United States was substituted as the defendant for all further proceedings.

statement of facts to said motion on June 15, 2010. (Docket No. 10). The United States filed a response opposing Plaintiff's statements of facts and submitted supporting affidavits and other exhibits on June 29, 2010. (Docket No. 13). Plaintiff then filed for, and was granted, an extension of time to file an additional supporting brief on July 12, 2010. (Docket Nos. 14, 15). Accordingly, Plaintiff filed her supporting brief on July 26, 2010. (Docket No. 16). The United States' Reply and supporting exhibits were filed on August 9, 2010. (Docket No. 17). As the briefing has concluded, the United States' motion is ripe for disposition.

## IV.    Applicable Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction over the plaintiff's claims. FED.R.CIV.P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.' " *Judkins v. HT Window Fashions Corp*., 514 F.Supp.2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

As the party asserting jurisdiction, the plaintiff bears the burden of showing that his or her claims are properly before the court. *Development Fin. Corp., v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Rule 12(b)(1) motion, a court must determine whether the attack on its jurisdiction is a facial attack or a factual attack. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The United States has asserted a factual attack in this instance. (Docket No. 5, ¶ 3). When a defendant launches a factual attack on subject matter jurisdiction, the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss. *Carpet Group Int'l v. Oriental Rug Imps. Ass'n,* 227 F.3d 62, 69 (3d Cir. 2000) (quoting *Mortensen*, 549 F.2d at 891).

In a factual attack, the court must weigh the evidence relating to jurisdiction, and has the discretion to consider affidavits, documents, and even limited evidentiary hearings to make the jurisdictional determination. *Atkinson v. Pa Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). Here, the parties have submitted documentary evidence and affidavits, which the Court has considered without resorting to an evidentiary hearing.[2]

## V.    Discussion

Plaintiff has brought claims for libel[3] and intentional infliction of emotional distress[4] against Defendant, the United States of America. (Docket No. 1-2). The United States raises four jurisdictional challenges to the claims in Plaintiff's Complaint. (Docket Nos. 5, 6, 13, 17). First, it contends that this Court lacks subject matter jurisdiction because Plaintiff's claims are barred by the Federal Employees Compensation Act ("FECA") 5 U.S.C. §8101 *et. seq.* (Docket

---

[2] Because a trial court's very power to hear a case is at issue in a factual 12(b)(1) motion, a court is free to weigh evidence beyond the plaintiff's allegations. *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir. 1997). An evidentiary hearing is therefore an option, but not required.

[3] *See Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa.Super. 2008).
> Defamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements. *Zartman v. Lehigh County Humane Society,* 482 A.2d 266, 268 (Pa.Super. 1984). A publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession. *See MacElree v. Philadelphia Newspapers, Inc.,* 674 A.2d 1050, 1054 (Pa. 1996). In order to be actionable, the words must be untrue, unjustifiable, and injurious to the reputation of another. *See* 42 Pa.C.S.A. § 8343(a). When communications tend to lower a person in the estimation of the community, deter third persons from associating with him, or adversely affect his fitness for the proper conduct of his lawful business or profession, they are deemed defamatory. *Green v. Mizner,* 692 A.2d 169, 172 (Pa.Super.1997). A "libel" is any malicious publication that is written, printed, or painted, or procured to be written, printed, or painted, and which tends to expose a person to contempt, ridicule, hatred, or degradation of character. *See Schnabel v. Meredith,* 107 A.2d 860, 862 (Pa. 1954); *see also Corabi v. Curtis Publishing Co.,* 273 A.2d 899, 904 (Pa. 1971).

[4] *See Kazatsky v. King David Memorial Park, Inc.,* 527 A.2d 988 (Pa. 1987). The gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor. Section 46(1) of the Restatement (Second) of Torts, which provides as follows:
> § 46. **Outrageous Conduct Causing Severe Emotional Distress**
> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Nos. 6, 13, 17). Second, the United States maintains that the doctrine of derivative jurisdiction[5] also deprives this court of jurisdiction. (Docket No. 17). Third, the United States argues that even if FECA and the doctrine of derivative jurisdiction do not apply to Plaintiff's claims, the Federal Torts Claims Act 28 U.S.C.A. §§ 2671 - 2680 ("FTCA") deprives this Court of subject matter jurisdiction because Plaintiff failed to exhaust her mandatory administrative remedies under the FTCA.[6] (Docket Nos. 6, 13, 17). Fourth, the United States argues that Plaintiff's claims are barred by the intentional torts exception to the FTCA. (Docket Nos. 6, 13, 17). In response, Plaintiff asserts that this Court has jurisdiction over her claims. The Court will address the parties' respective arguments, in turn.

A. *The Federal Employees Compensation Act*

FECA is a comprehensive and exclusive workers' compensation plan for federal government employees, which provides that:

> The United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty, unless the injury or death is (1) caused by willful misconduct of the employee; (2) caused by the employee's intention to bring about the injury or death of himself or of another; or (3) proximately caused by the intoxication of the injured employee.

5 U.S.C. § 8102(a). The remedies provided under FECA are exclusive of all other remedies against the United States for job-related injury or death. 5 U.S.C. § 8116(c). Congress's purpose in enacting § 8116(c) was to adopt the principal compromise of quid pro quo: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government. *Lockheed Aircraft Corp. v.*

---

[5] Under the doctrine of derivative jurisdiction, a federal court is without subject matter jurisdiction in an otherwise procedurally proper removal case, when the state court in which the suit was originally filed lacked subject matter jurisdiction. *Lambert Run Coal Co. v. Baltimore & O.R. Co.,* 258 U.S. 377, 382 (1922).
[6] A party bringing suit under the FTCA must first present the claim to the appropriate federal agency and receive a final denial before proceeding in the district courts. 28 U.S.C. § 2675(a).

*United States*, 460 U.S. 190 (1983). Thus, where FECA applies, "it unambiguously precludes all other liability of the United States either under a workmen's compensation statute or under a federal tort liability statute." *DiPippa v. United States*, 687 F.2d 14, 17 (3d Cir. 1982). If FECA is applicable because the injury is suffered in the course of the employee's duty, it does not matter that the cause of the injury was an intentional or negligent act. Jurisdiction would not lie in either event. The fact that a tort is intentional certainly does not preclude it from being suffered while in the performance of a public employee's duty. *Heilman v. United States*, 731 F.2d 1104, 1110 n. 6 (3d Cir. 1984).

The decision to award FECA benefits is entrusted to the Secretary of Labor and his decision is "final and conclusive for all purposes and with respect to all questions of law and fact; and is not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b); *Elman v. United States*, 173 F.3d 486, 488-89 (3d Cir. 1999). Stated differently, if a claim is covered by FECA, federal courts are without jurisdiction to consider its merits even if benefits are not actually awarded by the Secretary. *Tippetts v. United States*, 308 F.3d 1091, 1094 (10th Cir. 2002). Accordingly, the Court must first determine whether Plaintiff's libel and intentional infliction of emotional distress claims fall within the scope of FECA.

The FECA's "applicability turns on whether the injury was suffered in the performance of the employee's duty. Except for those exclusions noted in the statute, … it does not matter whether the injury was caused by an intentional or negligent act." *Farley v. United States,* 162 F.3d 613, 616 (10th Cir.1998). The statutory test of FECA coverage is whether the employee was injured "while in the performance of his duties." *Joyce v. United States*, 474 F.2d 215 (3d Cir. 1974). The ultimate and conclusive arbiter of this question, however, is the Secretary of

Labor and not the courts. *Heilman*, 731 F.2d at 1110. Moreover, in deference to the authority granted to the Secretary of Labor, where there is a "substantial question" regarding FECA coverage, federal courts must not entertain a claim, but rather must stay proceedings. *Id*. Axiomatically, federal courts must not stay proceedings and thereby retain jurisdiction, where it clearly appears from the allegations of the complaint that the injuries undoubtedly occurred while the employee was performing duties on behalf of the United States. *Id*.

Under the factual allegations made in Plaintiff's Complaint, not only is there "a substantial question" as to FECA coverage which would vest the Secretary of Labor with jurisdiction over this case, but the allegations in the Complaint themselves clearly and unequivocally establish FECA coverage. Plaintiff's status as a federal civilian employee is not in dispute. Plaintiff alleges that she was defamed when Scott sent an email to Plaintiff and at least four DCMA employees from his DCMA email account, stating that Plaintiff refused to work with him because of his race. (Docket No. 1-2 at ¶6). The alleged injuries that Plaintiff sustained as a result of this email circulation were in her capacity as a civilian employee and arose while she was performing her duties. Similarly, Plaintiff avers that Scott entered her office and accused of her hating him because of his race and that as a consequence she was so distressed that she had to leave work. (Docket No. 1-2 at ¶¶ 15-16). Plaintiff's distress resulting from this incident was also sustained in her capacity as a federal employee while performing her duties. Thus, the statutory test of FECA coverage is met based on the face of Plaintiff's Complaint. Accordingly, the Court does not have subject matter jurisdiction to entertain Plaintiff's claims and only the Secretary of Labor has the authority to compensate Plaintiff.

Plaintiff mistakenly argues that FECA only compensates employees who have suffered physical harm and thus, her libel and intentional infliction of emotional distress claims fall

outside the coverage of FECA. (Docket No. 16). Plaintiff is essentially contending that her claims raise no "substantial question" of coverage. Although this Court has already determined that on the basis of Plaintiff's Complaint alone that FECA applies, it also finds in the alternative that there is a substantial question of FECA coverage with respect to Plaintiff's claims. The United States Court of Appeals for the Third Circuit has recently indicated that a district court does not have subject matter jurisdiction over a plaintiff's claims for emotional harm whether or not a plaintiff *raises these FECA claims* in his complaint. *Burg v. Dep't of Health and Human Serv.*, 2010 WL 2842858 at *3 (3d Cir. 2010) (non-precedential). Specifically, even if a plaintiff does not raise emotional injury claims in a FECA complaint, the district court still lacks jurisdiction to consider these claims because there exists a substantial question of FECA coverage which only the Secretary of Labor may resolve. *Id*. Therefore, the Court lacks jurisdiction over Plaintiff's claims even if she suffered only emotional harm.

Plaintiff alleges that on March 29, 2010, she attempted to seek benefits under FECA, but was told by the Human Resources Department at DMCA that she was not entitled to receive FECA benefits. (Docket No. 10-1 at ¶ 16). Thus, Plaintiff did not file a FECA claim because of her reliance on the representations of the Human Resources employee at DCMA. Plaintiff provides no support for the proposition that her reliance on the representations of the Human Resources employee at DCMA somehow conveys subject matter jurisdiction to this Court. Moreover, the FECA statute of limitations, 5 U.S.C. § 8122 is three years, and has yet to expire given that the alleged events occurred on November 25, 2008, and March 17, 2010.[7]

---

[7] The relevant statute of limitations provides that:

> (a) An original claim for compensation for disability or death must be filed within 3 years after the injury or death. Compensation for disability or death, including medical care in disability cases, may not be allowed if a claim is not filed within that time unless—

Consequently, the Court must dismiss the Complaint, without prejudice to seek appropriate relief pursuant to applicable federal statutory remedies.

### B. The Federal Torts Claims Act

The United States also contends that even if FECA does not preempt Plaintiff's claims, this Court lacks subject matter jurisdiction over Plaintiff's claims under both the doctrine of derivative jurisdiction and the FTCA.

### i.     Derivative Jurisdiction

The United States has removed Plaintiff's action pursuant to §1442(a). (Docket No. 1 at ¶ 1). It argues that because §1346(b) of the FTCA grants the federal district courts *exclusive* jurisdiction over FTCA civil actions for money damages, Plaintiff's act of initially pursuing her claims in state court now deprives the Court from hearing Plaintiff's claims in this case, even if originally her claims would have been properly before this Court.

Under the doctrine of derivative jurisdiction, a federal court is without subject matter jurisdiction in an otherwise procedurally proper removal case, when the state court in which the suit was originally filed lacked subject matter jurisdiction. *Lambert Run Coal Co.*, 258 U.S. 377, 382 (1922). Thus, a federal court "derives" its jurisdiction from the state court, even if the plaintiff could have originally brought the action in federal court. *Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998). The viability of this doctrine is however, in dispute. This doctrine has been abolished with respect to cases removed under the general removal statute. *See* 28 U.S.C. § 1441(f). The status of this doctrine is unclear with respect to 28 U.S.C. §1442(a), which provides

_____

(1) the immediate superior had actual knowledge of the injury or death within 30 days. The knowledge must be such to put the immediate superior reasonably on notice of an on-the-job injury or death; or
(2) written notice of injury or death as specified in section 8119 of this title [5 USC §8119] was given within 30 days.

for the removal of a state case filed against the United States, its agencies, and/or its officers. A split in the authorities has emerged. A number of courts, including one within this District, have held that "the derivative jurisdiction doctrine is still viable with respect to cases removed pursuant to 28 U.S.C. §1442(a)." *See Scoratow v. Smith*, 2009 WL 890575, at *3 (W.D. Pa. 2009); *Smith*, 159 F.3d at 875; *In re Katrina Canal Breaches Consolidated Litigation*, 2007 W.L. 1461036 at *2 (E.D. La. 2007) (collecting cases). A minority of courts have held that Congress's 1985 amendment of § 1441(e) supports the complete abandonment of the derivative jurisdiction doctrine. *See North Dakota v. Fredericks*, 940 F.2d 333, 337 (8th Cir. 1991); *F.B.I. v. Superior Court*., 507 F. Supp. 2d 1082, 1090 (N.D. Cal. 2007). The United States Court of Appeals for the Third Circuit has not weighed in on the viability of the derivative jurisdiction doctrine as applied to §1442(a) removals.

The Court however, declines to join either side of the split in the authorities because even if Plaintiff had originally filed her case in this Court rather than in state court, it would have been dismissed pursuant to Rule 12 (b)(1) for lack of subject matter jurisdiction. Plaintiff's exclusive remedy is FECA.

ii.     Administrative Exhaustion Requirements

The United States argues that Plaintiff's failure to exhaust her administrative remedies under the FTCA provides an additional and independent basis for dismissing Plaintiff's Complaint. The Court agrees.

Generally, the United States is immune from suit unless it consents to be sued. *United States v. Sherwood*, 312 U.S. 584, 586 (1941). The FTCA creates a limited waiver of sovereign immunity for claims against the United States for the negligence of its officers or employees acting within the scope of their employment. 28 U.S.C. §1346(b); *Roma v. United States*, 344

F.3d 352, 362 (3d Cir. 2003). "Because the Federal Tort Claims Act constitutes a waiver of sovereign immunity, the Act's established procedures have been strictly construed." *Livera v. First Nat'l State Bank of N.J.*, 879 F.2d 1186, 1194 (3d Cir. 1989).

Although §1346(b)(1) of the FTCA grants federal district courts exclusive jurisdiction over civil actions or claims against the United States, a party bringing suit under the FTCA must first present the claim to the appropriate federal agency and receive a final denial before proceeding in the district courts. 28 U.S.C. § 2675(a). The FTCA further specifies that an FTCA action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b); *see also* 28 C.F.R §14.2 (a claim is deemed presented when the federal agency receives written notification of the alleged tortious incident and injuries accompanied by the claim for money damages in a *sum certain*). Thus, the administrative exhaustion requirements under the FTCA are clear and mandatory. Moreover, because the requirements of presentation and a demand for a sum certain are among the terms defining the United States' consent to be sued, they are *jurisdictional* and cannot be waived. *White-Squire v. U.S. Postal Service*, 592 F.3d 453, 457 (3d Cir. 2010).

Plaintiff contends that she exhausted all reasonable remedies under the FTCA because she filed EEO complaints, attended mediation regarding one of her EEO claims, and attempted to file a FECA claim. (Docket No. 10-1). Specifically, Plaintiff believes that her formal EEO complaint should satisfy the FTCA administrative exhaustion requirements. Plaintiff's EEO complaint however, addresses an entirely different claim, which is not before this Court, employment discrimination, and does not even mention the torts of intentional infliction of emotional distress or libel. *See Rosema v. Potter,* 2008 WL 4426335 at *8 (W.D. Mich. 2008) (filing an EEO complaint based on discrimination is insufficient to exhaust administrative

remedies under the FTCA); *see also Folley v. Henderson,* 175 F. Supp. 2d 1007, 1017 (S.D. Ohio 2001). Moreover, after receiving a letter from DCMA's EEO office which stated that Plaintiff's EEO complaint failed to state a claim upon which relief could be granted, Plaintiff failed to pursue an appeal with the EEOC or present her tort claims to a different federal agency. (Docket No. 13-1 at ¶¶ 7-9). Plaintiff also offers no evidence that she demanded a claim for money damages in a sum certain for her injuries from an appropriate federal agency. (Docket No. 6-1 at ¶ 4). Plaintiff has not met the presentation and sum certain requirements mandated by the FTCA and as such, she has failed to exhaust her administrative remedies. Therefore, this Court is without subject matter jurisdiction to entertain Plaintiff's claims even if FECA were inapplicable.

   iii. <u>Intentional Torts Exception to the FTCA</u>

  Finally, the United States also contends that Plaintiff's libel and intentional infliction of emotional distress claims fall within the intentional torts "exception" to the FTCA and thus, bars Plaintiff from seeking legal relief against the United States. A discussion of this jurisdictional challenge follows.

  As noted above, the enactment of the FTCA constitutes a limited waiver of the United States' sovereign immunity. *See* 28 U.S.C. § 1346(b). However, Section 2680 of the FTCA creates particular instances or "exceptions" to the general waiver of sovereign immunity provided in §1346(b). If a plaintiff's claim falls within one of these "exceptions," the United States retains its immunity from suit with respect to this claim and a court is again without subject matter jurisdiction. *In re Univ. Med. Ctr.*, 973 F.2d 1065, 1085 (3d Cir. 1992) (absent a specific waiver of sovereign immunity, the courts lack subject matter jurisdiction over claims against the federal government).

Section 2680(h) of the FTCA states, in pertinent part that "[t]he provisions of [Section 1346] ... shall not apply to ... [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights...." Thus, defamation suits against the United States are prohibited. *See Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000) (adopting the view of other circuits that an individual who is defamed by a federal employee acting within the scope of his or her employment has no remedy due to the protections afforded by the FTCA). Although § 2680(h) of the FTCA does not specifically list intentional infliction of emotional distress as an exception to the United States' general waiver of sovereign immunity, courts have found that the FTCA precludes claims of intentional infliction of emotional distress if they "arise out" of an enumerated "exception" under the FTCA. *Borawski v. Henderson*, 265 F. Supp. 2d 475, 484 (D. N.J. 2003); *see also Gonzalez-Jiminez De Ruiz v. United States,* 378 F.3d 1229, 1231 n. 3 (11th Cir. 2004) (stating "if the plaintiffs' allegations of deceit are essential to their intentional infliction of emotional distress claim, we lack jurisdiction under the FTCA to entertain that claim").

Plaintiff's Complaint asserts Scott libeled her by sending out an email to at least four of Plaintiff's colleagues stating that her refusal to work with him was because of his race. (Docket No. 1-2 at ¶ 6). Plaintiff's libel claim falls with the plain language of § 2680(h). Accordingly, she is barred from bringing this claim against the United States. Plaintiff has also admitted in her Response to the Motion to Dismiss that her claim of intentional infliction of emotional distress "arises from the libel statements of Mr. Scott." (Docket No. 10 at ¶ 10). Therefore, Plaintiff's intentional infliction of emotional distress claim against the United States must also fail.

## VI.     Conclusion

Based on the foregoing, the Motion to Dismiss filed by the United States [5] is GRANTED. All of Plaintiff's claims against the United States shall be dismissed, with prejudice. An appropriate ORDER follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:          October 12, 2010
CC/ECF:     All counsel of record.